So it's about a similarity issue. I'd like to reserve three minutes, please. And there was a prior case on the case number 3837. It's about an accused designer, one step up, 30037. By the way, we are talking about the same prior case, even though these two cases are two different subsequent cases. So these are two different alleged acts of infringement? Yes, Your Honor. You sued them separately? Yes. The one we just discussed was, like I said, about the same accused pattern. Same accused or same... But they denied that it's coming from them, so that we filed another action. But this case is a... Is it the same... Yes. Is it the same copyright-protected design and the same accused product at issue here? It's not the same accused product. That is why... Different accused product. Yes, because they modified that accused product. Your design is the same as the prior case, but the accused design is different. That is correct, Your Honor. And the district court found that they were not substantially similar as a matter of law. Yes. So the reason why this prior case is important is that explains access, and that even becomes a direct evidence of showing copying. For copying, you can show direct evidence, or you can show striking similarity, or substantial plus access. But the court below didn't rule on the issue of copying. The court didn't rule against you on access. The court ruled against you on whether they're substantially similar, right? Exactly, Your Honor. So that's the issue. So when we are talking about similarity, we are even talking... We are, in fact, talking about this as part of the copying element, which is the second element for a copyright case. And we presented direct evidence because there was a prior case pending, and that shows that all the accused design was using our design itself as a bottom layer in the Photoshop file. So even without that, because of this prior case pending, they knew about this design being disputed for copyright infringement, but they modified it subsequently in the middle of the case. And they were selling this new Accused Gardens. And then that becomes an issue of, number one, like I said, direct evidence of copying. And to me, it is strikingly similar, but arguably, like this court said, not even substantially similar. But when you say not substantially similar enough, and then you have to discuss that with the access issue, which was very strongly shown in this case. So because these two elements are to be analyzed in inverse ratio doctrine. But the inverse ratio doctrine only deals with the issue of access, correct? The inverse ratio doctrine has nothing to do with the question of whether the designs were substantially similar. Isn't that right?  So one line, you are talking about similarity. And the other line, you are talking about access. When similarities are strong, low level of access is required. But when access is strong, low level of similarities are required. You think access is strong here because Burlington and One Step Up were acting together. And One Step Up essentially, while not admitting it, did settle the lawsuit against you. And then Burlington modified the fabric. When One Step Up was making this another two-river design out of their original Accused Gardens, the case was pending. So it is not disputed. They had an access. They had our design. Do the complaint too. And then they made this. So access is very strong. And then that, in fact, lowers the requirements for showing of similarity level like this here. So, counsel, I don't see a case that says that. The only cases that I've seen say that when the defendant disputes copying, that the inverse ratio rule comes into play. But I haven't seen any case that says the inverse ratio rule is relevant when the issue is whether the designs are substantially similar. And as I understand what the defendants say, they're not taking issue for the purposes of summary judgment with access. So that was cited too in our opening brief, Your Honor. If I may, I'd like to try to find it and read it from our brief. Counsel, you don't know? That's page 18. Okay. That's about access. And the access should be analyzed in line of this inverse ratio doctrine. So the greater the access, the less similarity you have to find? Exactly. This is why we are calling this inverse ratio analysis. But if you want to – so let me just read it from – there you go. Page 18, Your Honor. Under Rule No. 3, you know, that's about access, and that should be discussed with similarity in the inverse ratio rule. And the fifth line – yes, the sixth line in the parentheses under the inverse ratio rule. If a defendant had an access and the plaintiff may show infringement based on lesser degree of similarity – But I believe the court there is simply talking about the copying access prong, not the substantial similarity prong that even if you can show access, you still have to show the same degree of substantial similarity. I hear what you're saying, Your Honor. So showing copying have three different ways. We know he copied it, and then that's direct evidence. Or striking similarity. This can never be a coincidence. So too similar, so it is copying. Or third way, that's another alternative way, is showing it's quite similar and there's a reasonable opportunity for them to access to this. So that's No. 3 issue, Your Honor. So our argument is we showed direct evidence as an independent way of proving it, and it's strikingly similar. And No. 3, by the way, even for substantial similarity issue, we have a very strong showing of access. So that, when the district court was saying, I see low level of similarity, and that should have been analyzed in the inverse ratio doctrine, Your Honor. So you're saying summary judgment was improper because the jury could have found substantial similarity here? Any reasonable juror may find for plaintiff, that's the question, in these circumstances. Maybe Your Honor may subjectively disagree, but there may be one juror that may, based on these circumstances, find facts or similarity or copying in favor of plaintiff. That means we have to go to trial. So the district court applied the extrinsic test, right? Is that the objective test, the objective analysis of the similarity? Yes. Okay. So as I understand it, a district court at this particular level applies the extrinsic test first. And if it passes the extrinsic test, then they also apply the intrinsic test, that is, looking at the whole impression. That is correct. They never did that in this particular case. Is that right? I think the district court was kind of mixing them up. So as a whole, I think, generally speaking, they don't really look similar. That's the, I think, the beginning of the district court's analysis. Well, they said they didn't apply the intrinsic test, right? So I'm just wondering what your remedy is. Your remedy, if they haven't applied the intrinsic test, is to send it back to the district court and suggest that the extrinsic test is satisfied, but that you also have to apply that second intrinsic test. That is correct. Is that what you're asking for? So, yes. You're not asking for a determination. It should go to a jury. You're asking for it to be sent back so the district court would apply the intrinsic test as well as the extrinsic test. Is that right? Generally, it is correct, Your Honor. So the extrinsic test first. Generally, it's correct? If I may, I would like to add a few more things, Your Honor. So 9th Circuit Court precedent case is, like Your Honor said, extrinsic test first about objective details, and then our page, the reporter page number 330, you know, there are a lot of side-by-side comparisons represented in the case. Your Honor, we'll see. We are not talking about diamond. You know, it is about, like, it's like cloud, but that generally looks like diamond. But the thing is, it is not about triangle or typical generic, like, geometric shapes. So even the same designer cannot draw that twice, but their portions are exactly the same. That makes us have to argue it is strikingly similar anyways. And then, so that shows very strong showing of similarity, like Your Honor said, for objective detail analysis. And then 9th Circuit precedent case is saying, and then matters should go to jury trial for intrinsic test analysis. That's true. Yes. We generally send it unless no reasonable juror could find that they were, the two designs were intrinsically similar. Right. But after extrinsic tests show objective details have similarities, and then now the court has to consider intrinsic test issue. But, like, I think the district court thought it was just big picture, side-by-side, as a whole. They don't look similar because they took only one little portion, which is the district court called diamond, which is not really diamond. But that was repeated here and there. So that, as a whole, may look like, it's like this Apple logo I copied out of complicated design, just one element. And I use it very vigorously as a main theme of my design. And then I will be in trouble because Apple is going to sue me for copyright infringement or trademark infringement. So that is, you know, general look as a whole. They don't look really similar. That's not how it is. That's about, like, whether we are talking about the similar portions, whether they are really similar. You know, we, the district court was focusing on dissimilar portions, only to say they don't look similar. But that's Ninth Circuit, President Casey says. You have to focus on similar portions. It's like a copied portion like this. If I use it vigorously, you look at it and see if this is a protective element, which it is true here, and then whether that was really similarly copied. Yes, it was copied. So that objective analysis or subjective analysis, whatever your honors may call it, who may want to do it, that's about those similar portions as protectable elements. And then that should, if the district court was not sure whether they were strongly similar enough, then it had to go. It was supposed to go. Wasn't there expert evidence in front of the district court? We did not submit an expert report because the expert report, like we stated for evidential objections, he was stating only, like, conclusive statements. It is one of those killing designs. But the examples that he's presenting, they are not even close. Like, let's say our design here and the accused banner here, and these examples coming from expert report is out there. They are not even close. So they cannot say this is one of those, like a concept. And the district court, in its opinion, it didn't cite to the, it didn't rely on the expert. It kind of just looked at it. Yes, your honor. I agree to that. The district court was analyzing extrinsic and intrinsic tests, which we have disagreements about. So, and what I want to, if I may, I would like to just, with the remaining time, one and a half minutes.  Thank you. Thank you. Again, Harlan Lazarus for the appellate. The discussion with respect to what the district court did is really explained fully in the district court's decision, because the district court says specifically that the court finds, as a matter of law, that the accused design and the subject design are substantially, cannot show that the accused design and the subject design are substantially extrinsically or intrinsically similar. But don't, in the Ninth Circuit, don't we generally leave the question of substantial similarity to the jury? If you get past, if you flunk the extrinsic tests as the defendant in one of these suits, certainly. But the judge even says in his order that generally we leave the intrinsic test to the jury. The intrinsic test. Right. Yes. And I'm quite certain, I just recently wrote something about that. That, and also discussing that, the fact that district court judges shouldn't be sitting in their chambers deciding whether infringing works are substantially similar or not, that those are questions for the jury. However, and understood, Your Honor, but the. It's really not supposed to be a subjective test, it's supposed to be an objective test. But that's why. And oddly, I found your expert persuasive, but the district court doesn't rely on the expert at all. The, it's not clear exactly what the district court did rely on. Is it, is it? But the district court did, in fact, break down in a very perhaps non-detailed fashion what the district court was looking at in determining that as extrinsically there was no similarity. It's not as if he used a broad brush phrase and then said. Given that, given how he did it, how are we supposed to decide? Are we supposed to, this is why this is problematic for the appellate courts. Are we supposed to sit here and look at it and say, oh, well, this one has squiggly lines and this one has some yellow and this one, you know. I mean, I'm not quite sure that's what we're supposed to be doing. Agreed, Your Honor. And one of the problems that this court had and perhaps the district court had is that there's no, first of all, all of this is inherently dependent on whether the designs or the motifs in the designs are protectable. And there has never been an attempt by the appellant to this court or to the district court. Did the appellant in its complaint attach a registration of copyright? Yes. Okay, so it's prima facie protected. What I'm referring to, however, Your Honor, is that in performing the extrinsic analysis, there was no effort to make by the appellant to show which elements of the design were protectable. But isn't it the alleged infringer's burden to demonstrate that it copied only elements that were non-protectable? It's not the copyright owner. That's correct, Your Honor. So that would have been your burden. So did you do that? Yes, we did. And that's, Your Honor, referred to the expert report. But the district court didn't rely on the expert report at all. And, in fact, the analysis is supposed to be looking at what's focusing on what's similar, not focusing on what's different. Except that there is also authority from this court, and we cite to it in Narell v. Friedman, 872 F. 2nd, 907-913, where you can take into account the similarities and the dissimilarities. But you're not supposed to be focused, which is another thing that's happening now, is the district courts are focusing on the differences and not looking first to the similarities. That's not true, Judge. And determining the copyrightable elements. You know, there's kind of a flip-flop here because the district court did, in fact,  So it's not as if the district court just abdicated its responsibilities under the law of this circuit. It did what the district court was supposed to do, looking at similarities and also looking at what the court perceived to be dissimilarities. Counsel, so you're saying that when the district court starts out this paragraph, as shown in the side-by-side comparison, the subject design is far more abstract and intricate than the accused design, that he's looking at the differences? That he's looking at the differences. That's what's called a stop-box. That particular paragraph, there he's talking about a dissimilarity. But inherent in there is that he's looking at what's similar. But what, again, I stress is that these are, and counsel used the name, the genre, which is Killam, these are Killam designs. And while the court has its own copies, this is not something that is not an historical. And I think that should have been, it could have been a reasonable thing for the district court to rely on. But he didn't seem to rely on that. Well, you know, then it's. Also, the other point of this I find, and I still don't, I'm not sure I fully understand all this, but so there was a settlement by one step as to the first design, and I understand there's no concession that it was infringing. But in the settlement, but then one step together with Burlington modified it, I guess, in an effort to make it non-infringing. We had a similar case earlier this week. And so that does, so the question is whether that modification was sufficient to differentiate the fabric. Because no amount of access is going to make stuff similar if it's not. It's also questionable whether that is, because I do believe that is counsel's argument, and there's no factual basis in the record for this plot between Burlington and one step up. There may be a temporal connect between the various events, but there's never been any evidence of people sitting in a room one way or the other and conspiring to change it just enough to avoid a liability. Tell me about this, the copyrighted product, the allegedly infringed product. Was it wildly successful? Yeah, there was a point in time when these things in the marketplace, and, Your Honor, I understand that that makes no difference, perhaps factually, but I see a lot of these cases, as does counsel, and as does this Court to some extent. Not a lot of this particular fabric, but. And there are trends in the fashion industry, and at this particular point in time, this was the trend. And there was lots and lots of this stuff out there, and our client and the plaintiff were capitalizing on a demand. After all, I don't think that counsel would dispute that they did not invent the Killam concept. Killams were hot. They copyrighted the expression of the Killam concept. Correct. And that's what you're doing, too, and it's just a question whether it's substantially similar to theirs. Correct. We believe the district court correctly found they're not both extrinsic and extrinsic. Thank you, Your Honor. All right, thank you. All right, counsel, I think you have a minute plus left. So it's woes, it's Chevron, it's killing, it's Aztec. You know, that's always what defense counsel says. That's about concept. Copyright law does not protect concept. You ask hundreds of different designers to draw the same votes, you will see hundreds of different styles. Expression, that's what we are protecting. We are talking about Killams that was existing thousands of years, which the expert report says, but this was never existing. This is our design. Then I'm looking at page 330 of the value, the expert's report, our report, Your Honor, our excerpts for the clerk. And then that's the prior accused pattern. This is pending case accused pattern. There is no real difference. The details, like I said, this is not just diamond, Your Honor. This is a hand-drawn random shape, and they are the same. Even the same designer cannot draw with twice because it's so random hand-drawn design. It is the same. We are not talking about concept of Killam. We are talking about one specific expression. Even the same designer could not repeat. That was repeated in their designs. That's the same. It is not about similarity, Your Honor. Thank you. Thank you very much, counsel. Neiman Brothers v. Burlington.
judges: Wardlaw, Sessions, Bennett